UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>ARTURO NAVARRO-ZUNIGA,<br><br>                              Defendant. | Case No.: 19-mj-23353-WVG-BTM<br><br>**ORDER AFFIRMING CONVICTION BEFORE A MAGISTRATE JUDGE**<br><br>**[ECF NO. 25]** |
|---|---|

Pending before the Court is Defendant Arturo Navarro-Zuniga's timely appeal of his conviction before a magistrate judge. (ECF No. 25). This Court has jurisdiction under 18 U.S.C. § 3402 and, for the reasons discussed below, will affirm his judgment of conviction.

## I. BACKGROUND

On August 14, 2019, the defendant was charged in a complaint with violating 8 U.S.C. § 1325(a)(1). (ECF No. 1). Magistrate Judge William V. Gallo held a bench trial on November 1, 2019 and found the defendant guilty as charged. (ECF No. 29). The defendant was sentenced to time served, and judgment was entered on November 6, 2019. (ECF No. 23). On November 8, 2019, the defendant timely appealed the conviction. (ECF No. 25).

The defendant raises three issues on appeal: (1) that his field statements should have been suppressed; (2) that his interrogation statements should have been suppressed; and (3) that the government failed to sufficiently corroborate his statements.  Each issue is addressed in turn.

## II. DISCUSSION

### 1. The defendant's field statements were properly admitted.

On August 13, 2019, a U.S. Marine Corps Scope Operator saw two individuals walking down a ridge about one mile north of the United States-Mexico border.  That area is closed to the public and is commonly used for illegal entry.  The scope operator's observation was reported on the radio to border patrol, and Border Patrol Agent Harris went to the area where the individuals were seen.  Agent Harris was wearing his rough-duty uniform and a tactical vest.  His uniform had a badge and a patch that says "C.B.P. BORDER PATROL."  His gun was in a holster on his hip and was visible.

After walking for a few minutes, Agent Harris saw someone and told him to stop, but that person ran away.  As Agent Harris began to chase him, he saw someone else sitting in or underneath a bush.  Agent Harris told him—the defendant—not to move, to put his hands up, and to stay seated.  Agent Harris did so with his voice raised, to convey his authority.  Agent Harris identified himself as a border patrol agent and handcuffed the defendant.

Agent Harris asked the defendant which country he was a citizen of, whether he had documentation allowing him to be in the United States, and whether he was in the United States illegally.  The defendant responded that he was a citizen of Mexico, that he did not have documentation, and that he was here illegally.  Agent Harris then arrested the defendant.

Whether a person is in custody such that *Miranda* warnings are required is a question reviewed de novo.  *See United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002).  A person is in custody if "a reasonable innocent person in such

circumstances would conclude that after brief questioning he or she would not be free to leave." *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981). "Pertinent areas of inquiry include the language used by the officer to summon the individual, the extent to which he or she is confronted with evidence of guilt, the physical surroundings of the interrogation, the duration of the detention and the degree of pressure applied to detain the individual." *Id.*

There is no question or dispute here that Agent Harris was permitted to conduct an investigatory stop. The sole question, rather, is whether the defendant was in custody because his "freedom of action [wa]s curtailed to a degree associated with formal arrest." *See Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). Under Ninth Circuit precedent, the defendant was not in custody when he answered Agent Harris's questions. The Ninth Circuit held that *Miranda* warnings were not required when a border patrol agent stopped a suspect's car, blocked it and prevented it from leaving, and approached it with his gun drawn. *United States v. Medina-Villa*, 567 F.3d 507, 520 (9th Cir. 2009).

Moreover, the Ninth Circuit has ruled that there was no arrest when a suspect was forced to lie on the ground at gunpoint, handcuffed, and detained in a police vehicle, *Allen v. City of Los Angeles*, 66 F.3d 1052, 1057 (9th Cir. 1995); when a suspect was placed in a patrol car, *United States v. Parr*, 843 F.2d 1228, 1231 (9th Cir. 1988); when a suspect was ordered not to move and to keep his hands in view and was then approached at gunpoint, *United States v. Alvarez*, 899 F.2d 833, 838 (9th Cir. 1990); when suspects "were forced from their car and made to lie down on wet pavement at gunpoint," *United States v. Buffington*, 815 F.2d 1292, 1300 (9th Cir. 1987); and where suspects were handcuffed, *United States v. Bautista*, 684 F.2d 1286, 1289-90 (9th Cir. 1982).

Here, handcuffing is the primary fact that could turn an otherwise routine investigatory stop into formal custody. While "handcuffing substantially aggravates the intrusiveness of an otherwise routine investigatory detention," *id.*, handcuffing

does not necessarily transform an investigatory stop into formal custody if it was reasonably necessary for officer safety. *See United States v. Taylor*, 716 F.2d 701, 709 (9th Cir. 1983) ("We have previously held that the use of handcuffs, if reasonably necessary, . . . do not necessarily convert a *Terry* stop into an arrest necessitating probable cause."); *see also United States v. Buffington*, 815 F.2d 1292, 1300 (9th Cir. 1987) ("[O]fficers conducting investigatory stops may proceed on reasonable suspicion that investigation is called for and may take reasonable measures to neutralize the risk of physical harm and to determine whether the person in question is armed. The use of force during a stop does not convert the stop into an arrest if it occurs under circumstances justifying fears for personal safety." (citation omitted)).

When Agent Harris handcuffed the defendant, the other suspect may have still be in the area, and that suspect and the defendant could have posed a risk of physical harm to Agent Harris, who was alone.  It was reasonably necessary for Agent Harris to handcuff the defendant during the investigative stop.  Based on the cases cited above, handcuffing the defendant did not turn a routine investigatory stop into formal custody.  *Miranda* warnings were thus not required, and the defendant's field statements were properly admitted.

### 2. The defendant's interrogation statements were properly admitted.

The defendant raises three arguments when claiming that his interrogation statements should have been suppressed: (1) that he was not properly informed of his right to counsel; (2) that the border agents deliberately, improperly used a "two-step technique"; and (3) that his waiver was involuntary because of the conditions of his confinement.  Each argument is addressed in turn.

**a) The Spanish translation is a factual question inappropriate for resolution on appeal, and the defendant was properly advised of his right to counsel in any event.**

"The adequacy of a *Miranda* warning is a question of law that is reviewed de

novo." *United States v. San Juan-Cruz*, 314 F.3d 384, 387 (9th Cir. 2002). "In order for the warning to be valid, the combination or the wording of its warnings cannot be affirmatively misleading. The warning must be clear and not susceptible to equivocation." *Id.* (citation omitted). Warnings that reasonably convey the *Miranda* rights are sufficient. *See Duckworth v. Eagan*, 492 U.S. 195, 203 (1989). Defendant argues that he was warned in Spanish that a lawyer "can" be provided to him, not "would" or "will" be provided to him, and thus that the warnings were misleading.

The Court must reject this argument, for two reasons. First, the defendant's interpretation of the Spanish warnings is inconsistent with the translation admitted in evidence at trial. That translation was provided by an interpreter certified by the Administrative Office of the U.S. Courts. Under that translation, the defendant was expressly advised that an attorney would be provided if the defendant wanted one.

The defendant's claim that he was advised that an attorney "can" be provided is based on witness testimony. At trial, Border Patrol Agent Filadelfo Colores, who gave the defendant the *Miranda* warnings in Spanish, was asked the meaning of the Spanish word "poder." He testified that "poder" means "to be able to" or "can." He also testified that "puede," a term used when the defendant was given *Miranda* warnings, was a conjugation of "poder."

Agent Colores was not offered as an expert at trial; in fact, the defendant objected to Agent Colores opining on the Spanish translation. Whether the defendant was advised that a lawyer "will" or "can" be provided if he wished is a factual question "inappropriate for resolution" on appeal. *United States v. Nukida*, 8 F.3d 665, 672 (9th Cir. 1993) (explaining that factual determination was "inappropriate for resolution" on appeal). The defendant, moreover, has not shown that the Court is required to accept—over the translation admitted at trial—opinion testimony on the Spanish translation.

In any case, even if the defendant was advised that a lawyer "can" be

provided to him if he wanted one, that warning would have been proper. There is nothing equivocal or vague about such a warning. It reasonably and appropriately explains the right to counsel under *Miranda*, and thus was proper.

This case is different than *United States v. Perez-Lopez*, 348 F.3d 839, 847 (9th Cir. 2003), where the defendant was warned that he could "solicit the court for an attorney if you have no funds." That warning suggested that a court would decide whether the defendant would be given counsel. Here, in sharp contrast, the defendant may have been advised that he could have an attorney if he wanted one. That warning would not have been improper. *See Duckworth*, 492 U.S. at 203. The defendant was properly advised of his right to counsel.

**b) The border agents did not deliberately employ a two-step interrogation.**

The defendant argues that the border agents deliberately employed a two-step interrogation because—when he was fingerprinted at the station before he was given *Miranda* warnings—they asked him about his nationality, citizenship, and time of entry. Whether the agents deliberately employed a two-step interrogation is a question reviewed for clear error. *United States v. Narvaez-Gomez*, 489 F.3d 970, 974 (9th Cir. 2007) ("We determine that a deliberateness finding is appropriately reviewed as a factual finding for clear error."). "[W]here law enforcement officers *deliberately* employ a two-step interrogation to obtain a confession and where separations of time and circumstance and additional curative warnings are absent or fail to apprise a *reasonable person* in the suspect's shoes of his rights, the trial court should suppress the confession." *United States v. Williams*, 435 F.3d 1148, 1158 (9th Cir. 2006).

"[I]n determining whether the interrogator deliberately withheld the *Miranda* warning, courts should consider whether objective evidence and any available subjective evidence, such as an officer's testimony, support an inference that the two-step interrogation procedure was used to undermine the *Miranda* warning." *Id.* Objective evidence includes "the timing, setting and completeness of the

prewarning interrogation, the continuity of police personnel and the overlapping content of the pre- and postwarning statements." *Id.* at 1159.

Here, that inquiry shows that the agents did not deliberately employ a two-step interrogation. While questions regarding citizenship are interrogative in this context, *see United States v. Williams*, 842 F.3d 1143, 1147 (9th Cir. 2016) ("[W]hen there is reason to suspect that a defendant is in the country illegally, questions regarding citizenship do not fall under the booking exception—even if they are biographical—because a response is reasonably likely to be incriminating."), it is nonetheless important that the pre-warning statements were given in response to booking questions. The defendant even concedes that they were "booking questions." (ECF No. 39 at 23:3). The prewarning statements were not given in response to a lengthy or formal interrogation.

Moreover, Border Patrol Agent Colores, who questioned the defendant after giving him warnings, was not involved in the prewarning questioning and did not improperly use the prior statements to undermine the *Miranda* warnings. There was a disconnect between the pre- and postwarning statements. The prewarning statements were not used to further the postwarning questioning or to persuade the defendant to waive his rights.

In short, the agents did not deliberately employ a two-step interrogation and did not undermine the *Miranda* warnings. *See Narvaez-Gomez*, 489 F.3d 972-75 (concluding agents not deliberately employ a two-step interrogation when one agent briefly, informally questioned the defendant in her car without warnings and a different agent interrogated the defendant about four hours later without referencing the prewarning statements); *see also United States v. Clevenger*, No. 11-cr-3518, 2011 U.S. Dist. LEXIS 120372, *17-18 (S.D. Cal. 2011) (finding agents did not deliberately employ two-step interrogation in part because postwarning questioning did not improperly use earlier statements); *United States v. Garcia-Hernandez*, 550 F. Supp. 2d 1228, 1235 (S.D. Cal. 2008) (same).

### c) The defendant's waiver and statement were voluntary.

Appellate courts review de novo the voluntariness of a *Miranda* waiver and a confession. *United States v. Amano*, 229 F.3d 801, 803 (9th Cir. 2000); *United States v. Coleman*, 208 F.3d 786, 790 (9th Cir. 2000). *Miranda* waivers "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception" and "must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). "In determining whether a defendant's confession was voluntary, the question is whether the defendant's will was overborne at the time he confessed." *United States v. Crawford*, 372 F.3d 1048, 1060 (9th Cir. 2004) (en banc).

The defendant's waiver and statement were voluntary. For this analysis, the Court will assume that the defendant's interrogation room was cold and that he did not eat from the time of his arrest, about 12:00 p.m., until he made the statements at about 4:15 p.m. However, there is no evidence or indication that the temperature of the interrogation room or the defendant's alleged hunger had any effect on his waiver or statements. The defendant's interrogation lasted only thirteen minutes.

These facts are far from the showing involuntariness of the defendant's statements. *See United States v. Gamez*, 301 F.3d 1138, 1144-45 (9th Cir. 2002) (finding confession voluntary where the defendant ate once during his 31-hour detention); *Mickey v. Ayers*, 606 F.3d 1223, 1233-34 (9th Cir. 2010) (ruling that a defendant's will was not overborne by "normal prison conditions").

In short, the defendant's waiver and statement were voluntary.

### 3. The defendant's admissions were sufficiently corroborated.

Last, the defendant claims that the government failed to adequality corroborate his admissions. "[A] defendant's confession requires some independent corroborating evidence in order to serve as the basis for a conviction."

*United States v. Lopez-Alvarez*, 970 F.2d 583, 589 (9th Cir. 1992).  There are two aspects of the corroboration requirement: the government (1) "must introduce sufficient evidence to establish that the criminal conduct at the core of the offense has occurred" and (2) "must introduce independent evidence tending to establish the trustworthiness of the admissions."  *Id.* at 592.  An "alien" violates Section 1325(a)(1) by attempting to enter or entering "the United States at any time or place other than as designated by immigration officers."

This Court reviews for clear error and holds that the defendant's admissions were sufficiently corroborated.  *See United States v. Hernandez*, 105 F.3d 1330, 1332 (9th Cir. 1997) (providing that review is for clear error).  Here, the defendant was found hiding by a bush about a mile from the U.S.-Mexico border in a remote area (1) closed to the public and (2) known as a common point for illegally entry. That evidence sufficiently corroborated the defendant's admission that he was a Mexican citizen here illegally and, together, is sufficient to sustain a Section 1325(a)(1) conviction.  *See generally United States v. Garcia-Villegas*, 575 F.3d 949, 951 (9th Cir. 2009) ("A reasonable fact-finder could infer from the fact that Garcia climbed two fences and hid in one bush that Garcia was conscious that he had no legal right to enter the United States. This substantial and independent evidence is sufficient to establish the trustworthiness of Garcia's statements."); *see also United States v. Vera-Rivas*, No. 19cr3622, 2023 U.S. Dist. LEXIS 38310, *8-9 (S.D. Cal. 2023) (finding the defendant's statements corroborated where "he was encountered over 8 miles from the nearest Port of Entry in an area known to be utilized by illegal entrants"); *United States v. Ledesma-Saldivar*, No. 20MJ20174, 2020 U.S. Dist. LEXIS 227460, *6 (S.D. Cal. 2020) (finding the defendant's statements corroborated where the defendant was found in a "rugged and remote" area "2.5 [miles] east of the nearest port of entry").

//
//

## III. CONCLUSION

For the reasons stated, the defendant's judgment of conviction is **affirmed**. (ECF No. 25).

**IT IS SO ORDERED.**

Dated: July 12, 2023

_____
Honorable Barry Ted Moskowitz
United States District Judge